IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK S. MOON, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>      Defendant. ) | Civil Action No. 06-1510 |

REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that the plaintiff's motion for summary judgment (Docket No. 10) be denied; that the defendant's motion for summary judgment (Docket No.13) be granted; that the decision of the Commissioner be affirmed and that judgment be entered accordingly.

II. Report

Presently before the Court for disposition are cross motions for summary judgment.

On November 16, 2006, Mark S. Moon by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing his claim for Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381 cf.

The instant application for Supplemental Security Income Benefits was filed on February 4, 2004 (R. 66-73). On April 5, 2004, benefits were denied (R. 34-38). On May 19,

2004, the plaintiff requested a hearing (R.39) and pursuant to that request a hearing was held on February 28, 2005 and August 3, 2005 (R.170-219). In a decision filed on September 19, 2005, an Administrative Law Judge denied benefits (R.10-17), and on November 23, 2005, the plaintiff requested reconsideration of that determination (R.6). On September 15, 2006, the Appeals Council affirmed the prior determination (R.3-5). The instant complaint was filed on November 16, 2006.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra., at page 401; Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. §1381; Chalmers v. Shalala, 23 F. 3d 752 (3d Cir. 1994). To be eligible for such benefits,

an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

>As set forth in 20 C.F.R. § 416.905(a) disability is defined as:
>
>the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
>In addition, a person will be considered disabled if he/she is
>
>(a) ... permanently and totally disabled as defined under a State plan approved under title XIV or XVI of the Social Security Act, as in effect for October 1972; (b) ... received aid under the State plan ... for the month of December 1973 and for at least one month prior to July 1973; and (c) ... continue[s] to be disabled as defined under the State plan.

20 C.F.R. § 416.907.

>A physical or mental impairment is defined in 20 C.F.R. §416.908 as an:
>
>impairment [which] result[s] from anatomical, physiological, or psychological abnormalities which [are demonstrated] by medically acceptable clinical and laboratory diagnostic techniques.

For purposes of determining whether or not the plaintiff met the eligibility requirements, certain evidence was considered by the Commissioner.

At the hearing held on February 28, 2005 and continued to August 3, 2005 (R.170-219), the plaintiff appeared with counsel (R.176) and testified that he was forty-three years old (R.180); that he earned a GED (R.181); that he was self employed as a handyman from 1998-2000 and as a laborer in 2003 (R.183-185) and that he is receiving public assistance (R.182).

The plaintiff also testified that since November 25, 2003 he has experienced residual pain from a previous injury to his hand (R.185-186); that he has had no other injuries since November 25, 2003 (R.188); that he takes medication for pain which makes him sleepy (R.200); that he can utilize his injured hand to pick up light objects (R.202) and that he visits friends two to three times a week and fishes (R.198-199).

At the hearing a vocational expert was called upon to testify (R.206-216). He categorized the plaintiff's work experience as medium to very heavy skilled work (R.207). The witness was asked to assume a person of the plaintiff's age, education and work experience capable of heavy exertion with limitations on use of his hand limited to simple routine repetitive tasks and indicated that there were a wide range of jobs such a person could perform even if limited to the use of one arm (R.208-215). However, the witness also testified that if the person could not be a dependable worker, then he would not be employable (R.216).

In addition, certain other evidence was considered.

The plaintiff was hospitalized for Percocet and Oxycontin abuse from July 23, 2002 through July 29, 2002. He was placed on an opiate detoxification program and was to follow-up with out-patient care (R.119-130).

The plaintiff was hospitalized from October 11, 2002 through October 14, 2002 for opiate dependence (R.131-133).

Only evidence regarding events occurring after November 24, 2003 was deemed relevant since events occurring prior to that date are the subject of another court appeal and plaintiff only alleges disability after that date in this claim (R.179).

The plaintiff was treated by Dr. Brett L. Acker between August 22, 2003 and February 20, 2004 for chronic pain from a previous near amputation of his left hand. It was reported that the plaintiff was back to work. Percocet was prescribed (R.134-139).

After reviewing the medical evidence and in a residual functional capacity assessment completed on March 19, 2004, it is noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk or sit for about six hours (R. 140-147).

The plaintiff was treated by Dr. Acker between January 21, 2004 and July 19, 2004. The doctor noted the plaintiff's narcotic abuse as a result of the pain medication he was taking (R.148-152).

The plaintiff was treated at the Seven Mountains Medical Center between June 7, 2005 and July 7, 2005 for pain management (R.155-161).

The plaintiff was treated at the Keystone Rural Health Center between August 3, 2004 and July 18, 2005 where he received Percocet (R.162-169).

Based on the evidence presented, the Commissioner determined:

Medical records reflect the claimant was discharged from care by Dr. Mark L. Acker due to requests from multiple physicians and dentists for opiate prescriptions. Additionally, he received in-patient treatment between July 23, 2002 and July 29, 2002 and between October 11, 2002 and October 14, 2002 for opiate dependence and detoxification. Accordingly, this impairment is severe.

The medical evidence reflects a past-history of a left hand injury on July 13, 2000, causing neuropathic pain. However, the evidence also reflects the pain is not continual and is relieved with medications. The evidence also reflects treatment for questionable hypoglycemia and bloody stools. However, there is no evidence these conditions affect his ability to perform basic work duties. Accordingly, these impairments are non-severe...

The claimant fails to meet the requirements of Listing 12.09, as there is no evidence of an additional physical or a psychological impairment causing severe limitations in his ability to perform activities of daily living, maintain social functioning, concentration, persistence or pace, or has caused repeated episodes of decompensation for extended periods...

The claimant testified he continued to experience neuropathic pain resulting from the injury sustained in 2000 when a circular saw cut his left hand. He was hospitalized for detoxification from pain medications, he continued to take up to eight Percocet tablets daily for pain, other medications provided no relief and the pain was adversely affected by cold weather. He also experienced instances in which the pain was so intense that he wanted to cut off his hand.

Upon considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms. However, the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible...

Dr. Brett L. Acker noted the claimant's complaints of neuropathic pain due to the left hand injury. There was limited range of motion in the third, fourth and fifth fingers, reduced sensation in the little finger and Percocet was increased during cold weather. However, there was evidence of the claimant painting and Dr. Acker noted the claimant was able to work...

On June 7, 2005, Dr. Sean Burke concluded the claimant was permanently disabled due to neuropathic pain. However, physical examinations were unremarkable, sensation was intact to light touch and pinprick and pain was reportedly only occasional...

Dr. Jennifer Chan related no ability to move the fifth finger and limited movement in the fourth finger. However, there currently was no hypersensitivity and the pain was maintained on 100 Percocet per month without difficulty...

The claimant also testified to watching a lot of television, using the computer to visit websites, playing poker and reading books and the want ads in the newspaper. He occasionally attended church, visited with friends two to three times a week, fished and took a trip to New Jersey. Additionally, he reported being able to lift up to

> 30 pounds with the left hand and being able to button clothing with two fingers on his left hand.
>
> * * *
>
> The claimant's ability to perform work at all exertional levels has been compromised by non-exertional limitations... The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations... at the light [medium and sedentary] exertional level ...
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate ... (R.14-17)

The evidence demonstrates that the plaintiff severely injured his left hand, and as a result experiences some degree of pain. This pain is managed with medication and as a result he is able to perform general daily living activities as well as engage in some degree of recreation. Thus, the conclusion of the Commissioner that the plaintiff is capable of engaging in gainful employment is supported by substantial evidence.

Summary judgment is appropriate where there are no material factual issues in dispute and the movant is entitled to judgment as a matter of law. <u>Biener v. Calio</u>, 361 F.3d 206 (3d Cir. 2004). In the instant case there are no material issues of fact in dispute, and the findings of the Commissioner are supported by substantial evidence. For this reason, it is recommended that the defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

Within ten days after being served with a copy, any party may serve and file written objections to the report and recommendation. Any party opposing the objections shall

have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                Respectfully submitted,

                s/ROBERT C. MITCHELL,
                United States Magistrate Judge

Date: June 5, 2007